UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DARNLEY,

    Plaintiff,                              CASE NO.:

-vs-

MONTEREY FINANCIAL
SERVICES, INC.,

    Defendant.
_____/

## COMPLAINT

COMES NOW Plaintiff, John Darnley, by and through the undersigned counsel, and sues Defendant, Monterey Financial Services, Inc. ("Monterey") and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Monterey from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

1

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Pinellas County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Saint Petersburg, Florida.

10. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8).

11. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Monterey, is a "creditor" as defined in Florida Statue § 559.55(5)

13. Monterey, is a corporation which was formed in California with its principal place of business located at 4095 Avenida De La Plata, Oceanside CA 92056 and which conducts business in the State of Florida through its registered agent, Registered Agent Solution Inc. located at 155 Office Plaza Dr Ste A, Tallahassee FL 32301

14. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Monterey called Plaintiff approximately three hundred (300) times since approximately January 1, 2016 in an attempt to collect a loan.

16. Upon information and belief, some or all of the calls Monterey made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received.

17. Beginning on or about January 1, 2016, Monterey began bombarding Plaintiff's cellular telephone ( 727 ) ***-2002 in an attempt to recover an alleged debt for an individual known as "Don."

18. Plaintiff does not currently know, nor has ever known an individual by the name of "Don."

19. Plaintiff does not currently have any business relationship with Monterey nor has ever had a business relationship with Monterey, and does not know how Monterey acquired his cellular telephone number.

20. From nearly the first received call in or around January 1, 2016, Plaintiff informed Monterey's agent/representative to please stop calling his aforementioned telephone number.

4

21. In or about August 2016, Plaintiff answered a call from Monterey to his aforementioned cellular telephone number, was connected to a live representative and informed an agent for Monterey that he was not "Don", did not know "Don" and again demanded that they cease calling his aforementioned cellular telephone number.

22. Upon receipt of the calls from Monterey, Plaintiff caller ID identified the calls were being initiated from, but not limited to, the following phone number: (760) 639-3500.

23. Monterey knowingly and willfully harassed Plaintiff numerous occasions by calling Plaintiff's cellular telephone number from approximately July 1, 2016 through the end of September 2016, all in an effort related to the collection of the subject account.

24. Despite actual knowledge that the number in question did not belong to "Don," Monterey continued to call Plaintiff's cellular telephone repeatedly.

25. Due to the amount of automated calls Plaintiff received from Monterey to his cellular telephone, Plaintiff was not able to properly catalogue each and every one; however, attached hereto as **Exhibit "A"** is a small sampling of the calls Plaintiff received.

26. Monterey has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Monterey, to remove the number.

27. Monterey's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Monterey they do not wish to be called.

28. Monterey has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

29. Monterey has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

30. Monterey has had numerous complaints against it from consumers across the country asking to not be called, however Monterey continues to call these individuals.

31. Monterey's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Monterey's call list.

32. Monterey has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

33. Not one of Monterey's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

34. Monterey willfully and/or knowingly violated the TCPA with respect to Plaintiff.

35. From each and every call placed without express consent by Monterey to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

36. From each and every call without express consent placed by Monterey to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Monterey call.

37. From each and every call placed without express consent by Monterey to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38. Each and every call placed without express consent by Monterey to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Monterey to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

40. Each and every call placed without express consent by Monterey to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

41. Each and every call placed without express consent by Monterey to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

42. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress and anxiety. The constant stress and anxiety caused Plaintiff's blood pressure to rise; thus, requiring a higher dose of high blood pressure medication.

## COUNT I
### (Violation of the TCPA)

43. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-two (42) as if fully set forth herein.

44. Monterey willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Monterey that Plaintiff wished for the calls to stop

45. Monterey repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Monterey for statutory damages, punitive damages, actual

damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

46. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-two (42) as if fully set forth herein

47. At all times relevant to this action Monterey is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

48. Monterey has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

49. Monterey has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

50. Monterey has violated Florida State § 559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

51. Monterey's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Monterey for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ 

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:   (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #:  0338620
*Attorney for Plaintiff*